UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

R.G., individually and on behalf of E.G., a child
with a disability,

                    *Plaintiffs*,


        -against-                                    Case No. 18-cv-12119 (JPC)(RWL)


NEW YORK CITY DEPARTMENT OF EDUCATION,

                    *Defendant.*

─────────────────────────────────────────────



PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT



CUDDY LAW FIRM, PLLC
*Attorneys for Plaintiff*
5693 South Street Road
Auburn, New York 13021
(315) 370-4020
kmendillo@cuddylawfirm.com

## TABLE OF CONTENTS

**DESCRIPTION**                                                              **PAGE**

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES.........................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS.............................................................................................1

STANDARD OF REVIEW……………………………………………………………6

ARGUMENT..................................................................................................................6

      I.      REIMBURSEMENT UNDER THE IDEA………………………………….6

      II.     AN IESP DOES NOT CONFER A FAPE, AND A PARENT DOES NOT HAVE A RIGHT TO IMPLEMENT AN IESP IN THE PUBLIC SCHOOL……9

      III.    THE SRO ERRED IN FINDING THAT EQUITABLE CONSIDERATIONS DO NOT WEIGH IN FAVOR OF THE PARENT'S REQUESTED RELIEF……………………………………………..12

CONCLUSION ............................................................................................................19

# TABLE OF AUTHORITIES

## **CASES**

*Bay Shore Union Free School Dist. V. Kain*
485 F.3d 730 (2nd Cir. 2007)……………………………………………………...10, 11

*Bd. of Educ. of Monroe-Woodbury Cent. Sch. Dist. V. Wieder*
72 N.Y.2d 174, 184 (1988)……………………………………………………………...11

*C.L. v. Scarsdale Union Free Sch. Dist.*
744 F.3d 826 (2nd Cir. 2014)…………………………………………………………14

*D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*
465 F.3d 503, 507-08 (2nd Cir. 2006)……………………………..……………………7, 8

*Endrew F. v. Douglas Cty. Sch. Dist. RE-1*
2017 WL 1066260 (Mar. 22, 2017)……………………………………………………9,10

*E.T. v. Bd. of Educ. of Pine Bush Cent. Sch. Dist.*
2012 WL 5936537, at *11 (S.D.N.Y. Nov. 26, 2012)………………………………10, 18

*Florence County Sch. Dist. Four v. Carter*
510 U.S. 7 (1993)………………………………………………………………………7

*Frank G. v. Board of Educ. of Hyde Park*
459 F.3d 356 (2nd Cir. 2006)…………………………………………………………7, 8

*Honig v. Doe*
484 U.S. 305, 311 (1988)………………………………………………………………6

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*
397 F.3d 77, 83 n. 3 (2nd Cir. 2005) …………………………………………...……6

*L.K. v. New York City Dept. of Educ.*
758 F.3d 442, 461 (2nd Cir. 2014)…………………………………………………….13

*Murphy v. Arlington Cent. Sch. Dist. Board of Educ.*
297 F.3d 195, 197 (2nd Cir. 2002)……………………………………………………6

*M.V. v. Shenendehowa CSD,*
2008 WL 53181 (N.D.N.Y. 2008)……………………………………………………13

*R.E. v. New York City Dept. of Educ*
694 F.3d 167 (2nd Cir. 2012)…………………………………………………………7, 8

*Sch. Comm. Of Burlington v. Dept. of Educ.*
471 U.S. 359, 370 (1985)……………………………………………………………………...7, 12

*T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*
554 F.3d 247, 252 (2nd Cir. 2009)……………………………………………………6, 7, 8

*Viola v. Arlington Cent. Sch. Dist.*
414 F.Supp.2d 366, 377 (S.D.N.Y.2006)……………………………………………6

*Walczak v. Fla. Union Free Sch. Dist.*
142 F.3d 119, 122 (2nd Cir. 1998)……………………………………………………6

*Warren G. v. Cumberland County Sch. Dist.*
190 F.3d 80, 84 (3rd Cir. 1999)……………………………………………………..8, 13

*W.M. v. Lakeland Cent. Sch. Dist.*
783 F.Supp.2d 497, 504 (S.D.N.Y. 2011)……………………………………….……14

*Wolfe v. Taconic Hills Cent. Sch. Dist.*
167 F.Supp.2d 530, 533 (N.D.N.Y. 2001)……………………………………….....13, 15

## STATUTES AND OTHER AUTHORITIES

20 U.S.C. § 1401……………………………………………………………………………..8

20 U.S.C. § 1412…………………………………………………………………....…11, 13

20 U.S.C. § 1414…………………………………………………………………………..6, 9

20 U.S.C. § 1415…………………………………………………………………………..6

34 C.F.R. § 300.137…………………………………………………………………………9

N.Y. Ed. Law § 4401……………………………………………………………….……9

N.Y. Ed. Law § 3602-c………………………………………………..……9, 10, 11, 15

8 N.Y.C.R.R. § 200.4…………………………………………...…………..8, 10, 12

8 N.Y.C.R.R. §
200.5………………………………………………………………………………...17

## PRELIMINARY STATEMENT

This is an appeal of the decision of a state review officer (SRO) that upheld the decision of an impartial hearing officer (IHO) following an administrative hearing conducted pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. The SRO's decision denied Plaintiff's request to be reimbursed the costs of the child's (E.G.) tuition at the Staten Island Academy for the 2017-2018 school year. Plaintiff parent now brings this motion for summary judgment reversing the decision of the SRO.

## STATEMENT OF FACTS

Ethan G. ("E.G.") was born in 2011 and has been classified as a student with autism (EG0295). During the 2017-2018 school year, he attended Staten Island Academy (SIA), a private school (EG0366-0376). SIA is a pre-kindergarten through twelfth grade college preparatory school, located on twelve acres in the Todt Hills section of Staten Island (EG0075-0076). The class size ratio at SIA ranges from ten to twelve students per teacher. (EG0077).

He attended a class with both typically functioning children and some high-functioning children with disabilities (EG0081). E.G. also attended a pre-kindergarten program at SIA, from 2014 to 2016, and a kindergarten program (EG0111).

E.G. was evaluated by Staten Island University Hospital (SIUH) in March 2014, when he was three years old (EG0318). The evaluator noted a prior diagnosis of Asperger's disorder, and found that he "presents with atypical language features, deficiencies in pragmatic language use and Hyperlexia" (EG0320). E.G. presented as "overactive, somewhat impulsive and unfocused at times." *Id.* The evaluator diagnosed an expressive language disorder and hyperactivity, deemed E.G. at risk for attention deficit hyperactivity disorder (ADHD) and for a social communication disorder. *Id.*

1

In February 2014, an evaluator from New York Epilepsy & Neurology noted that E's "clinical history and exam" is "more consistent with Asperger's syndrome" (EG0322). He found that E.G.'s "primary issues" were "expressive language" and "socialization cues." *Id.* A pre-kindergarten assessment form, also dated February 2014, notes that "[w]hile it was evident that [E.G.'s] academic skills were excellent, [E.G.] did not demonstrate an ability to sit, focus or attend to a task, for any suitable length of time" (EG0323). This opinion of E.G.'s academic skills was confirmed by the SIUH testing the following month: on the Kaufman Survey of Early Academic and Language Skills, "[n]umbers, letters and words had a standard score of 145[]"; "[e]xpressive skills had a standard score of 139[]"; "[r]eceptive skills had a standard score of 106[]"; and, "age equivalents were 5 years 1 month for Number Skills and Above 6 years 11 months for Letter and Word Skills." (EG0319).

E.G.'s mother testified that the parents noticed toe-walking and other behaviors at an early age. (EG0158). Following evaluations by both Dr. Saidi Clemente at SIUH, and by the Department of Education, the parents learned that E.G. had an autism spectrum disorder. (EG0160-0161).

The parents decided to send E.G. to SIA for a part-time pre-kindergarten program (EG0162-0165). At the time they applied for admission to SIA, however, E.G. had not been diagnosed with his various disabilities. (EG0165, 0166). The school accepted E.G.; the parents elected to send him to the program three days weekly. (EG0167-0168).

After the parents learned of E.G.'s various diagnoses, they made an appointment with the SIA director of admissions to explain that E.G. had, in the interim, been diagnosed with Asperger's (EG0167-0168). The school elected to allow E.G. to attend, with supports including special education itinerant teacher (SEIT) services (EG0168).

2

After E.G. attended the SIA pre-kindergarten programs for two years, the parents referred him to the Department's committee on special education (CSE) for the Turning Five (T5) process (EG0169). The school psychologist at E.G.'s local community school, which is located around the corner from the family's house, claimed that E.G. "would not be able to function in a regular kindergarten setting" (EG0169-0170, 0171). He told the parents that the CSE would be recommending a 6:1+1 or 8:1+1 class in a District 75 (D75) school (EG0170). The D75 school referenced by the school psychologist was on the other side of Staten Island from the family home, and was overly restrictive. (EG0172; 0285, 0286). The parents thus placed E.G. at SIA for kindergarten, during the 2016-2017 school year. (EG0273) (IHO decision awarding reimbursement for SIA tuition during the 2016-2017 school year).

Dr. David Gordon is the director of the Patrick Academic Resource Center (PARC) at SIA. (EG0074). PATC provides the support services for the students with learning differences at SIA. *Id.* His duties as director include overseeing the accommodations and direct services that students with learning differences receive, and providing some direct instruction (EG0075). PARC services about 70 of the 350 students attending the school (EG0076, 0078).

Besides Dr. Gordon, PARC employs two learning specialists. (EG0079). The Lower School learning specialist, Maria Hurley, is dual-certified in general and special education, and has received formal training in Orton-Gillingham. *Id.* PARC provides extensive training for the classroom teachers at SIA, including basic training in Orton-Gillingham, and the learning specialists push into the classrooms to provide team planning for the students with learning differences (EG0080). All students receive their core instruction in regular classes, with the learning specialists pushing in, or occasionally pulling the student out, to the extent additional support is required (EG0080-0081).

During the 2016-2017 school year, E.G.'s primary difficulties were behavior and transition into and out of the classroom (EG0081). PARC set up a plan with the Sensory Studio, an independent provider, to address these issues (EG0081-0082). By December, the behavioral and transition issues just were not anywhere near what they had been at the start of the year, and they have continued to improve during the 2017-2018 school year (EG0082). Both behaviorally and socially he has integrated into the classroom and is presently doing well. *Id.*

At SIA, E.G. receives push-in and pull-out services from the SIA learning specialist during both English language arts and math (EG0082). The learning specialist is a certified special education teacher (EG0086-0087). He also receives direct counseling services from the SIA counselor (EG0083). His reading is on grade level, but he has challenges with math (EG0086).

Lea Prendergast is the Director of the Lower School at SIA (EG0109-0110). She has known E.G. since he attended pre-K (i.e., pre-kindergarten for three-year olds  at SIA (EG0110). She was his math specialist for three years, from pre-K 3 through his kindergarten year (EG0111). Over the course of E.G.'s pre-K years at SIA, E.G. made great gains socially (EG0115).

During kindergarten, E.G. was doing much better socially, but he would still have occasional outbursts (EG0118). "He started to be able to really communicate more with his classmates, and with the teacher" (EG0118-0119). "[S]ocially, the base push for him was, in kindergarten he genuinely solidified his position, if you will, as a member of the class. And the kids love him, and he really started to just realize how much he enjoyed his classmates in school" (EG0121).

He was excelling in benchmarks beyond just reading (which had always been a strength) (EG0118). "In reading, as I said, so he's always been very good at decoding, but what we started to get is his comprehension abilities were progressing really nicely." (EG0120).

On May 21, 2017, the parent signed a notice of intention to parentally place E.G. at SIA (EG0260). On June 28, 2017, a New York City Department of Education CSE convened to develop a program for E.G.'s 2017-2018 school year (EG0303; 0181). That meeting was attended by two individuals affiliated with the Department and by both parents (EG0303). The CSE made no effort to include anyone from SIA at the June 2017 meeting (EG0054-0055). At the June 28, 2017 CSE meeting, the parents "were completely open" to [E.G. attending] the Westerly School[,] which was E.G.'s community school (EG0181). While the parents communicated their openness to the CSE regarding E.G. attending his community school, the CSE declined to offer a community school setting, or even an IEP. *Id.* Instead, the CSE prepared an individualized education services program (IESP) for the 2017-2018 school year (EG0295). However, a prior written notice dated June 29, 2017, explicitly describes the action proposed by the CSE regarding E.G.'s placement as "NYC DOE Specialized School" (EG0257). Since the CSE refused to offer an IEP, the parents returned E.G. to SIA for the 2017-2018 school year (EG0181). On August 16, 2017, the parents sent a ten-day notice of unilateral placement at SIA to the CSE (EG0182; 0337). The Department did not convene a CSE meeting in response to the ten-day notice (EG0182).

The first-grade class that E.G. attends has seventeen students and two co-teachers (EG0125). In addition, both the learning specialist and the math specialist push into the class regularly (EG0125-0126). E.G. is only occasionally pulled out of the class, either for math or for Orton-Gillingham work (EG0126). He is capable of doing grade-level work, with supports

(EG0126-0127). He derives great benefit from ongoing exposure to typically-functioning peers in the classroom (EG0130-0131).

## STANDARD OF REVIEW

Unlike with an ordinary summary judgment motion, the existence of a disputed issue of material fact will not necessarily defeat a motion for summary judgment in the IDEA context. See, e.g., *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.,* 554 F.3d 247, 252 (2nd Cir. 2009); *Viola v. Arlington Cent. Sch. Dist.,* 414 F.Supp.2d 366, 377 (S.D.N.Y.2006). Instead, summary judgment in IDEA cases such as this is "in substance an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.,* 397 F.3d 77, 83 n. 3 (2nd Cir. 2005) (internal quotation marks omitted). Courts reviewing administrative decisions under the IDEA must determine whether they are reasoned and supported by the record, applying a preponderance of the evidence standard. 20 U.S.C. § 1415(i)(2)(C)(iii).

## ARGUMENT

### I.    REIMBURSEMENT UNDER THE IDEA

The Individuals with Disabilities Education Act (IDEA) is part of "an ambitious federal effort to promote the education of handicapped children." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2nd Cir. 1998). The IDEA's education delivery system begins with the "individualized education program," or IEP. *Murphy v. Arlington Cent. Sch. Dist. Board of Educ.*, 297 F.3d 195, 197 (2nd Cir. 2002); *Honig v. Doe*, 484 U.S. 305, 311 (1988); see 20 U.S.C. § 1414(d). An IEP is "a written statement that 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet

6

those objectives.'" *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.* 465 F.3d 503, 507-08 (2nd Cir. 2006). Under the IDEA, for a child's IEP to be adequate, it must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement. *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 254 (2nd Cir. 2009). In *R.E. v. NYCDOE,* 694 F.3d 167 (2nd Cir. 2012), the Second Circuit "adopt[ed] the majority view that the IEP must be evaluated prospectively as of the time of its drafting[.]" *Id.*, at 186.

A district may be required to reimburse parents for their expenditures for private special educational services obtained for a student by the parents, if (1) the services offered by the district were inappropriate, (2) the services selected by the parent were appropriate. Equitable considerations, relating to the reasonableness of the action taken by the parents, are relevant in fashioning relief. *Sch. Comm. Of Burlington v. Dept. of Educ.* 471 U.S. 359, 370 (1985); *Frank G. v. Board of Educ. of Hyde Park*, 459 F.3d 356 (2nd Cir. 2006). The fact that the facility selected by the parents to provide special education services to the child is not approved as a school for children with disabilities by the State Education Department is not dispositive of the parents' claim for tuition reimbursement. *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993). In *Burlington*, the court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA. "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Burlington, supra*, at 370-71.

Parents seeking reimbursement for a private placement bear the burden of demonstrating that the private placement is appropriate, even if the proposal in the IEP is inappropriate.

Nevertheless, parents are not barred from reimbursement where a private school they choose does not meet the IDEA definition of a free appropriate public education. See 20 U.S.C. § 1401(9). An appropriate private placement need not meet state education standards ore requirements. *Carter, supra*, 510 U.S. at 14. For example, a private placement need not provide certified special education teachers or an IEP for the disabled student. *Id.* In addition, parents "may not be subject to the same mainstreaming requirements as a school board." *Frank G., supra*, 459 F.3d at 364 citing *Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 84 (3rd Cir. 1999) (holding that "the test for the parents' private placement is that it is appropriate, and not that it is perfect").

An individualized education program is "a written statement that 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507-08 (2nd Cir. 2006). Under the IDEA, for a child's IEP to be adequate, it must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement. *T.P.*, 554 F.3d 247, 253.

"In developing the recommendations for the IEP, the committee must consider the results of the initial or most recent evaluation; the student's strengths; the concerns of the parents for enhancing the education of their child; the academic, developmental and functional needs of the student, including, as appropriate, the results of the student's performance on any general State or district-wide assessment programs; and any special considerations in paragraph (3) of this subdivision." 8 N.Y.C.R.R. § 200.4(d)(2). In *R.E.*, the Second Circuit "adopt[ed] the majority view that the IEP must be evaluated prospectively as of the time of its drafting[.]" *R.E.*,694 F.3d

167, at 186. The IDEA includes the requirement that "the special education and related services and supplementary aids and services" be "based on peer-reviewed research to the extent practicable[.]" 20 U.S.C. § 1414(d)(1)(A)(i)(IV).

In *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 2017 WL 1066260 (Mar. 22, 2017), the Supreme Court held that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." 2017 WL 1066260, at *12. In New York, the school district must carry the burden of proving that its recommended program provides the student with a free appropriate public education. N.Y. Ed. Law § 4401(1)(c).

## II.    AN IESP DOES NOT CONFER A FAPE, AND A PARENT DOES NOT HAVE A RIGHT TO IMPLEMENT AN IESP IN THE PUBLIC SCHOOL

The IDEA does not confer an individual entitlement upon children enrolled in private school to receive services a child would receive if enrolled in a public school. 34 C.F.R. § 300.137(a) ("No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school"). "In contrast to the IDEA, New York State law does confer an individual entitlement to special education services and programs to eligible students enrolled by their parents in nonpublic schools. Education for students with disabilities means special education programs 'designed to serve' students with disabilities N.Y. Educ. Law § 3602-c(1)(d). Subdivision 2 of section 3602-c of the Education Law requires boards of education, upon timely request by parents, to furnish appropriate special education programs to students with disabilities *privately placed by their parents in nonpublic schools*." SRO 06-069. Such a program is set forth in an individualized educational services plan or IESP.

As a district judge recently noted:

9

> The more limited services provided to parentally-placed children in private schools is commonly known as equitable participation, and is distinct from the FAPE requirement…Equitable participation entitles disabled children who are parentally placed in private schools to certain services, which may be provided at the private school. …Equitable participation must also entail a "plan that describes the specific special education and related services that the LEA [of location] will provide to the child." …In New York, this plan is known as an Individualized Education Service Program, i.e., the IESP. N.Y. § 3602(c)(b).

*E.T. v. Bd. of Educ. of Pine Bush Cent. Sch. Dist.*, 2012 WL 5936537, at *11 (S.D.N.Y. Nov. 26, 2012) (some citations and internal quotations marks omitted). These "more limited services" are not equivalent to the comprehensive set of services required in an IEP. 8 N.Y.C.R.R. § 200.4(d)(2); see generally *Endrew F.*

Thus, while the entitlement to services created by section 3602-c is harmonious with the IDEA, it is a distinct state-created entitlement rather than part of New York's implementation of FAPE. *Bay Shore Union Free School Dist. V. Kain*, 485 F.3d 730 (2nd Cir. 2007). In *Bay Shore*, "[t]he parties contend[ed] that IDEA's standard for FAPE incorporates by reference all state standards, even if the state regulations exceed the minimum floor established by federal law… Thus, even though Kain contends that New York law requires his son to receive a one-to-one aide at St. Patrick, the parties argue this is a "civil action [] arising under the…laws of the United States' such that federal question jurisdiction is appropriate. We disagree." 485 F.3d at 734 (second and third ellipses in original, first ellipsis, remove citation, added). While the Court found it unnecessary to reach the issue of whether IDEA incorporates section 3602-c, it did find that rights under 3602-c did not turn on an interpretation of federal law, and, as such, if found that the federal courts lacked jurisdiction over the question.

What is clear is that a parent cannot be compelled to choose between a state-created 3602-c right and a federally-created right to reimbursement under the IDEA. See 20 U.S.C. §

1412(a)(10)(C)(ii) ("If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment"). As the district court noted in *Bay Shore*, IDEA "requires participating states to establish a 'basic floor of meaningful, beneficial educational opportunity,' but states may exceed the federal floor and enact their own laws and regulations to guarantee a higher level of entitlement to disabled students." 485 F.3d at 733. As the "basic floor" of educational opportunity includes reimbursement rights under section 1412(a)(10)(C)(ii), the state cannot interpose section 3602-c as a substitute for that right, but rather only as a supplement, with the pre-existing federal right remaining intact. Such a finding is completely consistent with the legislative intent of section 3602-c, which "was plainly designed to increase benefits afforded to handicapped children in private schools – not to limit them – by offering these students access to all of the special programs provided for public school students and by integrating them generally with public school students." *Bd. of Educ. of Monroe-Woodbury Cent. Sch. Dist. V. Wieder*, 72 N.Y.2d 174, 184 (1988). Importantly, however, the 3602-c right, by its very language, is limited to nonpublic school students; nothing in the law entitles a student to implementation of the IESP in a public-school setting.

In a reimbursement case, under New York law, the school district bears the burden of proving that its proposed program and placement is appropriate. N.Y. Educ. L. § 4404(1)(c). An appropriate program begins with an IEP which accurately reflects the results of evaluations to

identify the student's needs, establishes annual goals and short-term instructional objectives related to those needs, and provides for the use of appropriate special education services. An IEP must be prepared in accordance with certain procedural requirements, including prior written notice to the parent. A school district is required to conduct an annual review of a child's IEP, and recommendations must be made. 8 N.Y.C.R.R. § 200.4(f). "The school district shall ensure that each student with a disability has an IEP in effect at the beginning of each school year." 8 N.Y.C.R.R. 200.4(e)(1)(ii).

In its decision, the SRO noted that the district acknowledged its requirement to offer a FAPE to each student with a disability residing in the district and requiring special education (EG0467). Further, the SRO noted that the district conceded that the IHO erred in conflating the provision of FAPE with the provision of equitable services pursuant to an IESP (EG0467-0468).

III.   THE SRO ERRED IN FINDING THAT EQUITABLE CONSIDERATIONS DO NOT WEIGH IN FAVOR OF THE PARENT'S REQUESTED RELIEF.

After finding that the Defendant failed to offer E.G. a FAPE, and not addressing the issue of whether the parent's proposed placement was appropriate as the district had not appealed that determination, the SRO noted that equitable considerations were the pivotal factor in deciding whether the parent is entitled to an award of tuition reimbursement. For the reasons set forth hereinafter, the SRO erred in finding that equitable considerations weigh against the parent's request for tuition reimbursement.

Equitable considerations are relevant to fashioning relief under the IDEA. *Burlington*, 471 U.S. at 374; see also *Carter*, 510 U.S. at 16 (noting that "Courts fashioning discretionary equitable relief under the IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required."). Such considerations "include the parties' compliance or noncompliance with state and federal regulations pending review, the

reasonableness of the parties' positions, and like matters." *Wolfe v. Taconic Hills Cent. Sch. Dist.*, 167 F.Supp.2d 530, 533 (N.D.N.Y. 2001). With respect to equitable considerations, a parent may be denied tuition reimbursement upon a finding of a failure to cooperate with the CSE in the development of an IEP or if the parent's conduct precluded the CSE's ability to develop an appropriate IEP. *Warren G. v. Cumberland Co. Sch. Dist.*, 190 F.3d 80, 86 (3rd Cir. 1999). In the absence of evidence demonstrating that petitioners failed to cooperate in the development of the IEP or otherwise engaged in conduct that precluded the development of an appropriate IEP, or failed to give proper notice, equitable considerations generally support a claim of tuition reimbursement. See *M.V. v. Shenendehowa CSD*, 2008 WL 53181 (N.D.N.Y. 2008 ("If a student is not provided with a FAPE and the private placement determined by the parents is deemed appropriate, the district court enjoys broad discretion in considering equitable factors relevant to fashioning relief"). Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable. *L.K. v. New York City Dept. of Educ.*, 758 F.3d 442, 461 (2nd Cir. 2014).

The IDEA in fact codifies only three aspects of the "equities" analysis, namely whether the parent gave the school district adequate notice of the unilateral placement, whether the parent withheld consent to evaluate, or "upon judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii).

None of the above factors codified in the IDEA apply in the instant matter. First, the parent provided a ten-day notice letter to the Defendant advising of her intention to enroll E.G. at SIA at public expense (EG0337). Particularly, the ten-day notice letter submitted by the parent, dated August 16, 2017, advised of the parent's disagreement with special education program recommended by Defendant, and also of the parent's intention to enroll E.G. at SIA starting

13

September 6, 2017. *Id.* Moreover, the testimony at the administrative hearing demonstrated that the parent fully cooperated in the CSE meeting held for purposes of developing E.G.'s special education program for the 2017-2018 school year (EG0179 – 0181).

The Second Circuit has held that even when parents have no intention of placing a student in the recommended program, it is not a basis to deny a request for tuition reimbursement absent a finding that the parents "obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826 (2nd Cir. 2014). In finding that the equitable factors weighed in favor of the parents, the Second Circuit noted the fact the parents "requested that the District evaluate C.L. under the IDEA and develop an IEP for him." *Id.* "Where the issue in dispute is the balancing of the equities, [it is] a matter as to which district courts not only have particular expertise but also broad discretion." *W.M. v. Lakeland Cent. Sch. Dist.,* 783 F.Supp.2d 497, 504 (S.D.N.Y. 2011).

In finding that the equitable considerations weighed against the parent's request for relief, the SRO did not find that the Parent failed to provide timely notice to the Defendant, nor did the SRO find that the parent was uncooperative or otherwise obstructed Defendant's obligations under the IDEA. Instead, the SRO focused on a criteria not explicitly addressed under the IDEA, which was the parent's submission of a notice of intent to parentally placed the Student at SIA (EG0260). The SRO agreed with Defendant's argument that by signing the notice of intent to parentally place the student at SIA in May 2017, the parent objectively manifested the intent to place the student at SIA for the 2017-2018 school year (EG0471). The SRO held that the parent's objectively manifested intent weighed heavily in the balance of equitable considerations and barred the parent from receiving tuition reimbursement as relief for the Defendant's failure to offer the child a FAPE. *Id.*

14

However, the SRO's analysis ignores several key points in the record demonstrating that no equitable factors exist to act as a bar to parent's claim for tuition reimbursement. First, the parent signed the notice of intent to parentally place the child at SIA on May 21, 2017. Under New York State's dual enrollment statute, parents of a New York State resident student with a disability who place their child in a nonpublic school and seek to obtain educational services for his or her child are required to file a request for such services on or before the first day of June preceding the school year for which the request for services is made. N.Y. Educ. Law § 3602-c(2).

In submitting the § 3602-c notice, the parent was ensuring compliance with the New York State statute requiring submission of the notice on or before the first day of June preceding the school year for which the request was being made. The SRO's decision holds against the parent actions that were intended to comply with § 3602-c(2). The SRO's rationale runs contrary to *Wolfe* where the Court explained that equitable considerations "include the parties' compliance or noncompliance with state and federal regulations pending review…" *Wolfe*, 167 F. Supp.2d 530, 533.

 At the time the parent executed the notice, she had only a mere eleven days before the notice was due pursuant to the New York statute. With the committee on special education meeting scheduled for June 28, 2017, well past the due date for submission of the notice, the parent was not in a position where she could first attend the CSE meeting and assess the Department's recommended program before making a determination as to whether to enroll E.G. at SIA, or at the Defendant's placement under the program recommended in an IEP. Had the parent not executed and submitted the notice by the June 1st deadline, the parent would not have been entitled to an IESP for her son's ensuing school year, as the notice would not have been

15

timely under the New York statute. Instead, the parent would have been left with only two options; opting for the program/placement recommended by Defendant in the IEP, or placing E.G. at SIA, but in the absence of additional special education services available through an IESP. Untimely notice of her request for an IESP would have stripped the parent of her right to convert the IEP to an IESP in the event she disagreed with the program recommended by Defendant at the June 28th meeting, and sought placement at SIA with IEPS services.

Simply put, had the parent not executed the notice, then in the event she disagreed with the Defendant's recommended program and placement at the June 28th meeting, while she would still be able to enroll her son at SIA, she would not have been able request additional services for him by way of an IESP. The parent's execution of the notice was not a manifestation of her intent to enroll her son at SIA, but rather insurance to guarantee her son would be entitled to special education services through an IESP in the event she disagreed with the Department's program and opted to enroll her son at SIA for the upcoming school year under an IESP.

Although the SRO interpreted the parent's execution of the notice as a manifestation of the parent's intent to enroll E.G. at SIA, such an interpretation is not supported by the record. The parent's intention to enroll E.G. at SIA as reflected by the notice was conditional and only to be consummated in the event that parent did not agree with the Department's recommended program and placement (EG0179-0180). At the time that the notice was executed by the parent, a public-school placement had still not been offered by the Defendant (EG0179). To further demonstrate that the parent was not committed to enrolling E.G. at SIA parent's the parent obtained insurance on the enrollment contracted she had executed with SIA, which she explained was to ensure the refund of any money expended in the event she chose not to enroll her son at SIA (EG0188-0199). Moreover, the parent testified at hearing that at the June 28, 2017, CSE

meeting, she expressed to the CSE that she was open to a public-school placement for E.G. (EG0180 - 0182; 0190). During the impartial hearing, the parent again reaffirmed her interest in a public-school placement for her son (EG0195 - 0197).

Clearly, the parent's expression of her being open to a public-school placement for E.G. were received by the CSE at the June 2017 meeting, as the Defendant issued a prior written notice after the meeting, which expressly indicated that the Defendant was recommending a New York City Department of Education Specialized School for E.G. (EG0257)[1]. Furthermore, Defendant's school psychologist, after being asked to refer to the portion of the prior written notice that recommended a public-school placement, testified at the impartial hearing that she understood the Department's recommendation of a public school in the prior written notice meant that E.G. should have an IEP (EG0057). The testimony of the Defendant's school psychologist and the Defendant's development of a prior written notice recommending a public school placement for E.G. clearly and unequivocally demonstrate that at the time of the June 28, 2017 CSE meeting, Defendant was actively considering a public school placement for E.G. despite the parent's execution of the May 21, 2017 notice letter, and furthermore, that Defendant was well-aware that a public school placement for E.G. would necessitate an IEP rather than an IESP. However, as is well-established by the record on appeal, Defendant never developed an IEP for E.G., which resulted in the parent then having to commit to enrolling E.G. at SIA for the 2017-2018 school year. If the parent's execution of the May 21, 2017 notice did amount to a manifestation of intent by the parent to enroll her son at SIA, such intent was not recognized by

---

[1] Pursuant to 8 N.Y.C.R.R. § 200.5(a), a prior written notice is to be issued to the parent of a student with a disability a reasonable time before the school district proposes to or refuses to initiate or change the identification, evaluation or *educational placement* of the student.

the Defendant, otherwise, it would not have developed a prior written notice recommending a public school placement after submission of the notice letter by the parent.

The SRO determined that when aligned with the court's holding in *E.T.*, the parent's objectively manifested intent weighs heavily in the balance of equitable considerations and bars the parent from receiving tuition reimbursement. *E.T.* is a factually similar case involving an eligible student receiving publicly funded special education services at a nonpublic school and a district that did not develop an IEP for the Student. The Court, after finding that the school district retained an obligation to offer the student a FAPE, determined that the "issue of the parents' intent [was] a question that inform[ed] the balancing of the equities rather than whether the district had an obligation to the child under the IDEA. *E.T.* 2012 WL 5936537, at *16. However, the Court made no finding in this case as to whether equitable factors weighed in either parties' favor. Instead, the case was remanded by the Court to the SRO for further proceedings. *Id.* Therefore, the importance of *E.T.* is not in utilizing it as a tool for analogizing the facts there with the case at bar to decide the equities issue, but rather, in that it establishes the proposition that the intent of the parent is a key issue for the Court to consider when analyzing the equities issue.

For the reasons that have been set forth herein, the parent's actions in the instant case fail to establish the parent's intent as to where she intended to enroll her son for the 2017-2018 school year. The record supports a finding that equitable considerations weigh in the parent's favor, and the SRO erred in finding that equitable considerations bar the parent's claim for tuition reimbursement.

CONCLUSION

Based on the foregoing, the Court should reverse the decision of the SRO, award the tuition reimbursement to the Plaintiff for tuition paid to SIA during the 2017-2018 school year, for the period not covered by the IHO's pendency order dated December 4, 2017, which was retroactive to November3, 2017, and grant such further relief as the Court deems just and proper.

Dated: Auburn, New York
     June 3, 2021              Respectfully submitted,

                              /s/ Kevin M. Mendillo
                              CUDDY LAW FIRM, PLLC
                              *Attorneys for Plaintiffs*
                              5693 South Street Road
                              Auburn, New York 13021
                              (315) 370-4020